IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2020 Session

## DAVID CHASE v. CHRIS STEWART ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 2015-200          Michael Binkley, Judge**

_____

**No. M2018-01991-COA-R3-CV**

_____

A trial court held two attorneys in contempt, assessing damages and sanctions against them. Shortly before another hearing in which the court was to consider a supplemental award of attorney's fees, the judge of the trial court made comments in an unrelated case about one of the attorneys held in contempt. That attorney moved to recuse based, in part, on the judge's comments. The trial court denied the motion to recuse and later entered a supplemental order of damages against the attorneys. Because the judge's comments provide a reasonable basis for questioning his impartiality, we reverse the denial of the motion to recuse. And because retroactive recusal is appropriate, we also vacate the contempt and damages orders.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Brian P. Manookian, Nashville, Tennessee, pro se appellant.

Mark Andrew Hammervold, Elmhurst, Illinois, pro se appellant.

Brian P. Manookian, Nashville, Tennessee, for the appellant, Cummings Manookian PLC.

Mark Andrew Hammervold, Elmhurst, Illinois, for the appellant, Hammervold Law, PLC.

Gayle I. Malone, Jr., Charles I. Malone, and Beau C. Creson, Nashville, Tennessee, for the appellees, Dean Chase, Sandra Chase, and D.F. Chase, Inc.

Marcus M. Crider and Heath H. Edwards, Nashville, Tennessee, for the appellees, CK Global, LLC and NV Music Row, LLC.


## OPINION

### I.

### A.

In this consolidated appeal, we review the trial court's denial of a motion to recuse and its orders holding in contempt and sanctioning two attorneys, Brian Manookian and Mark Hammervold, and their respective law firms, Cummings Manookian PLC[1] and Hammervold Law, PLC. The orders on appeal arise from, but have little to do with, a case filed by David Chase ("Plaintiff") against multiple defendants. Mr. Manookian and Mr. Hammervold represented several of the defendants. Purportedly to defeat an element of the malicious prosecution claim brought by Plaintiff and to prove Plaintiff had not suffered reputational harm, Mr. Manookian subpoenaed individuals and entities that were not parties to the case. The non-parties included Plaintiff's parents, Dean Chase and Sandra Chase; and entities to which Plaintiff had some connection, D.F. Chase, Inc.; CK Global, LLC; and NV Music Row, LLC. Mr. Manookian also sought deposition testimony from Plaintiff's parents.

Wanting to protect confidential information, Dean Chase; Sandra Chase; D.F. Chase, Inc.; CK Global, LLC; and NV Music Row, LLC (collectively, "Petitioners") proposed an agreed protective order before responding to the subpoenas or submitting to the depositions. And, after negotiations, counsel reached an agreement on the terms of the protective order. Among other things, the proposed order defined confidential information, provided methods for both designating information as "confidential" and challenging such designations, and restricted the indiscriminate or mass designation of information as "confidential."

Counsel for Petitioners then proposed that the document production could proceed provided that Mr. Manookian would agree that the production was subject to the protective order despite it not being entered by the court. Mr. Manookian responded: "I agree that the Order is binding on me and my clients at the time it is signed with permission as opposed to entered by the Court." So counsel for Petitioners filed the proposed agreed protective order with the court. The same day, Petitioners produced

---

[1] After briefing in this appeal, Cummings Manookian PLC filed a voluntary bankruptcy petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Tennessee. Late last year, the Chapter 7 Trustee reported that "it is unforeseeable that the bankruptcy case will be resolved before April, 2021, at the earliest."

over 78,000 pages of documents in response to the subpoenas. Petitioners designated all of the documents as "confidential" under the proposed agreed protective order. In a cover letter, counsel for Petitioners stated that, while they "realize[d] that the Protective Order cautioned against mass designation of documents as 'confidential' . . . it would have been unduly burdensome upon our clients to review each of the . . . documents . . . ." Counsel for Petitioners offered to conduct a page-by-page review if Mr. Manookian's clients would pay for it. Counsel alternatively suggested that Mr. Manookian's clients could challenge any "confidential" designation to a specific document or documents.

Mr. Manookian objected to the mass designation and, in a filing with the court, withdrew his consent to the proposed agreed protective order. But, a few days later, he made another filing requesting that the court enter the proposed agreed protective order. Petitioners then filed a motion requesting the entry of a protective order and that the court sustain its confidentiality designations. They set the motion for hearing on October 30, 2015.

Before the hearing took place, Mr. Manookian filed documents and excerpts from the deposition transcripts of Dean and Sandra Chase, all of which had been designated as "confidential," in response to a motion filed by Plaintiff. Counsel for Petitioners appeared at an October 20, 2015 hearing on Plaintiff's motion and made an oral motion. Counsel requested that the court treat as confidential all documents already produced by Petitioners, as well as the deposition testimony of Dean and Sandra Chase. Counsel also requested that the response filed by Mr. Manookian, including the exhibits, be kept under seal. The court granted the oral motion.

At the October 30, 2015 hearing, the court again ruled in favor of Petitioners and ordered that "all pleadings or documents containing, attaching, or referencing documents, testimony, or information designated as confidential . . . were to be filed under seal." And the court "adopted,"[2] with modifications, the proposed agreed protective order. The court ordered that documents designated as "confidential" be protected consistent with the terms of the agreed protective order. The court's oral rulings at the October 20 and October 30 hearings were reflected in written orders entered on November 7, 2015, and November 6, 2015, respectively.

B.

On February 25, 2016, Dean Chase, Sandra Chase, and D.F. Chase, Inc. moved for sanctions. They claimed that, on February 3, 2016, confidential materials, including video recordings of Dean Chase's and Sandra Chase's deposition testimony, were

---

[2] It is unclear if the court entered the proposed agreed protective order.

3

featured on two television news broadcasts and were also published online. And other media outlets had published stories using the same materials.

While the motion did not specifically allege that either Mr. Manookian or Mr. Hammervold provided the confidential materials to the media, it blamed the pair for use of confidential documents in separate litigation they had filed on behalf of another client against Dean Chase. The motion asked the court to identify who had violated its previous orders and to hold those parties or counsel in contempt and award costs, attorney's fees, and other expenses.

Following a hearing on the motion for sanctions, the court entered an order identifying four attorneys "whose actions in this matter strongly indicate violations of Tennessee Rule of Civil Procedure 37.02 and possible contempt of the orders of th[e] Court." The court granted leave to those "affected by alleged violations of Tennessee Rule of Civil Procedure 37.02 and violations of the corresponding Court Orders [to] file appropriate pleadings for sanctions, listing specifically each violation alleged to have occurred and the specific injury inflicted upon each party." Petitioners did so against three attorneys, including Mr. Manookian and Mr. Hammervold and their respective law firms.

After the hearing, the trial court found Mr. Manookian and Mr. Hammervold in contempt. The court found Mr. Manookian in contempt for using confidential materials in preparing, strategizing, and negotiating the separate lawsuit and in attaching a confidential document to a pleading in that lawsuit. And the trial court also found that Mr. Manookian had disclosed confidential materials to the media after the court had ordered that such documents not be disclosed. The trial court found Mr. Hammervold in contempt for allowing the filing of the confidential document in the separate lawsuit. Though Mr. Manookian made the filing, Mr. Hammervold was his co-counsel. As such, the court held that Mr. Hammervold was responsible as well.

The trial court also sanctioned Mr. Manookian and Mr. Hammervold under Tennessee Rule of Civil Procedure 37.02. The trial court first sanctioned both attorneys for the same actions for which it had found them in contempt. The court then found other actions of the two attorneys sanctionable. As to Mr. Manookian, the trial court sanctioned him for disclosing confidential materials to law enforcement and three attorneys not involved in the case before the court issued any ruling on the protective order. The court categorized those actions as an abuse of discovery. The court also found that he was not candid with the court and attempted to defraud the court. As to Mr. Hammervold, the trial court sanctioned him for Mr. Manookian's disclosure to the media. The court found that Mr. Hammervold "had knowledge of and was complicit in concealing the improper disclosure" from the court. The court reasoned that Mr. Hammervold had also abused the discovery process, failed to be candid with the court, and attempted to defraud the court.

4

Based on its finding of contempt—and, alternatively, its finding of sanctionable conduct—the trial court awarded damages to Petitioners in the form of attorney's fees and expenses against Mr. Manookian and Mr. Hammervold and their respective law firms. Considering affidavits filed by Petitioners' attorneys, the court awarded Petitioners $622,696.12. The trial court also granted counsel for Petitioners leave to supplement their affidavits with fees incurred for time spent preparing for the contempt hearing through the date of the contempt order.

C.

About a month after the contempt order and before the hearing on the supplemental fee request, the judge of the trial court referenced Mr. Manookian while presiding over a hearing in the case of *Elite Emergency Services, LLC v. Nesmith*. In open court, the judge said

> There was a lawyer, Mr. Brian Manookian, who I have released a one-hundred-twenty-two page memorandum and order on, who, among many, many other things, submitted a false and fake package, along with another person, to the Board of Professional Responsibility and the Court of the Judiciary.
>
> Well, come to find out that it was fake. And it was wrong. Channel 4 News picked it up and made it a headline . . . . Totally false. Totally false.
>
> The Board of Professional Responsibility saw what it was and said, "We're not going to investigate it, Judge Binkley." And I said, "Oh, please do. I'm begging you to investigate because you know how people are. They'll read half the story and say, 'Ah, that was a put-up. They're helping Judge Binkley out.'"
>
> I don't want that. I hired a lawyer and I said, "Let's do it right." Full investigation, dismissed, and it should've been. Now, Channel 4 News published it as if it were true. Now, what do I do when I'm sitting there watching that, and my family is watching it, and all of my friends are watching it?
>
> And as a judge it's probably good that I don't say a word. It's very difficult. But my day will come. And it's just about here . . . . I feel like it's necessary for me to be crystal clear, transparent and clear. I did not like what Mr. Manookian did at all, and my day will come.

5

After the trial court made these comments, Mr. Manookian, on behalf of himself and his law firm, moved to recuse the judge.[3]  In his recusal motion, Mr. Manookian argued, among other things, that the above comments showed the court's bias against him.  The trial court denied the recusal motion, finding the statements made in open court "irrelevant to the issues in the present case."

Two days after the denial of Mr. Manookian's recusal motion, the trial court awarded Petitioners $126,073.09 in supplemental attorney's fees in a separate order.  In total, then, the trial court held Mr. Manookian, Mr. Hammervold, and their respective law firms jointly and severally liable for $748,769.21.  The trial court designated the original order of contempt and damages and the supplemental order of damages together as a final judgment under Tennessee Rule of Civil Procedure 54.02.

## II.

Mr. Manookian petitioned for an accelerated interlocutory appeal of the denial of his third recusal motion.  *See* TENN. SUP. CT. R. 10B, § 2.01.  And Mr. Manookian and Mr. Hammervold appealed the final judgment of contempt and damages.  We consolidated the interlocutory appeal with the appeal of the final judgment.

The parties' arguments focus both on whether the trial judge should have recused himself and on the merits of the contempt and damages orders.  We find the recusal issue dispositive.  As to that issue, the parties argue over various possible grounds for recusal.  We focus on the trial court's comments about Mr. Manookian in the unrelated proceeding.

## A.

Rule 10B of the Rules of the Supreme Court of Tennessee governs the procedure for "determin[ing] whether a judge should preside over a case."  TENN. SUP. CT. R. 10B.  When a trial court denies a motion to recuse, a party can either take an interlocutory appeal or raise the issue in an appeal after entry of final judgment.  *Id.* § 2.01.  In both scenarios, we review a trial court's ruling on a motion to recuse de novo.  *Id.*

In Tennessee, litigants "have a fundamental right to a 'fair trial before an impartial tribunal.'"  *Holsclaw v. Ivy Hall Nursing Home, Inc.*, 530 S.W.3d 65, 69 (Tenn. 2017) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)); *see Kinard v. Kinard*, 986

---

[3] The previous year Mr. Manookian filed two recusal motions, which were denied.  He sought accelerated interlocutory review of the denial of his first recusal motion.  *See* TENN. SUP. CT. R. 10B, § 2.01.  We affirmed the denial of that motion.  *Chase v. Stewart*, No. M2017-01192-COA-T10B-CV, 2017 WL 3738466, at *4 (Tenn. Ct. App. Aug. 29, 2017).  Mr. Manookian did not seek interlocutory review of his second recusal motion.

S.W.2d 220, 227 (Tenn. Ct. App. 1998) (reasoning that litigants "are entitled to the 'cold neutrality of an impartial court'" (quoting *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967))); *see also* TENN. CONST. art. VI, § 11. It "goes without saying that a trial before a biased or prejudiced fact finder is a denial of due process." *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998).

Tennessee has long recognized that "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001); *see In re Cameron*, 151 S.W. 64, 76 (Tenn. 1912) ("[I]t is of immense importance, not only that justice shall be administered . . . , but that [the public] shall have no sound reason for supposing that it is not administered."). Of course, a judge should recuse when they have "any doubt as to [their] ability to preside impartially in [a] case." *Davis*, 38 S.W.3d at 564. But a judge must also "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." TENN. SUP. CT. R. 10, Rule 2.11(A). This test is "an objective one." *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008). It requires recusal "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis*, 38 S.W.3d at 564-65 (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)).

A party seeking disqualification or recusal must support a recusal motion with an affidavit or declaration and "other appropriate materials." TENN. SUP. CT. R. 10B, § 1.01. When a party brings forward a trial court's comments as evidence to support a recusal motion, we must determine whether the comments "indicate that the judge has prejudged factual issues." *Alley*, 882 S.W.2d at 822. "Any comments made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case." *Id.*

Here, Mr. Manookian submitted the declaration of Samuel Clemmons. In this declaration, Mr. Clemmons detailed the comments that the trial judge made about Mr. Manookian in the *Elite Emergency Services* case, to which Mr. Clemmons was a party.[4] Petitioners challenge Mr. Clemmons's declaration as "inherently suspect, at best." We disagree. Courts instead presume that testimony provided under oath and

---

[4] Petitioners argue that Mr. Manookian waived the right to seek recusal of the trial judge based on the judge's comments. A party waives the right "to question a judge's impartiality" if the party does not assert the grounds for recusal "in a timely manner." *Kinard*, 986 S.W.2d at 228 (citations omitted). A one-year delay in asserting grounds for recusal constitutes waiver. *Chase*, 2017 WL 3738466, at *3; *In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *6 (Tenn. Ct. App. Aug. 31, 2016). Here, Mr. Manookian filed the third recusal motion twenty-two days after the judge's comments. Under the circumstances, we find that Mr. Manookian acted in a timely manner.

7

penalty of perjury is true. *See, e.g.*, *Hogue v. Kroger Co.*, 356 S.W.2d 267, 271 (Tenn. 1962) ("This court certainly will not ascribe to the oath-taker the infamy of a perjurious mind. We think, with every presumptive support, that people normally are honest and tell the truth." (citation omitted)). In its order denying the recusal motion, the trial court treated the comments as if they had been made, so we do also.

In his comments, the judge claimed that Mr. Manookian "submitted a false and fake package . . . to the Board of Professional Responsibility and the Court of the Judiciary." The media ultimately "picked it up" and published a "[t]otally false" story about the judge. But, the judge continued, the media published the story "as if it were true." So, the judge wondered, "what do I do when I'm sitting there watching that, and my family is watching it, and all of my friends are watching it?"

The gist of the comments is that the judge blamed Mr. Manookian for the court's exposure to negative publicity, possibly drawing the scrutiny of the judge's family and friends. The judge was "crystal clear" and "transparent" about not liking that "at all." The court also did not like "many, many other things" Mr. Manookian had done. And the judge envisaged that "my day will come."

Taken in context, "a reasonable person would construe th[e] remarks as indicating" that the judge may have sought retribution against Mr. Manookian for a perceived wrongdoing unrelated to the contempt charges.[5] *See Alley*, 882 S.W.2d at 822. This possible motivation provides "a reasonable basis for questioning the judge's impartiality." *See Davis*, 38 S.W.3d at 564; *see also State v. Cobbins*, No. E2012-02025-CCA-10B-DD, 2012 WL 5266427, at *22-23 (Tenn. Crim. App. Oct. 25, 2012) (recusal warranted based, in part, on trial court's comments that it was "[m]y time" and "my day had finally come").

Petitioners insist that the trial court was "impartial and entirely fair" to Mr. Manookian and Mr. Hammervold.[6] The record reflects that the judge showed

---

[5] In the order denying the motion to recuse, the trial court provided more context. The judge explained that Mr. Manookian had been providing information about the judge to Mr. Clemmons. Mr. Clemmons then used this information to file a complaint with the Board of Judicial Conduct. That complaint was later dismissed. In the judge's view, Mr. Manookian and Mr. Clemmons "have obviously worked together for the sole purpose of . . . attempt[ing] to publicly embarrass or ridicule the Court."

[6] Petitioners argue that Mr. Hammervold did not properly preserve the recusal issue for appeal. In response to our order directing the parties to respond to Mr. Manookian's Rule 10B petition for recusal appeal, *see* TENN. SUP. CT. R. 10B, § 2.05, Mr. Hammervold, on behalf of himself and his law firm, joined the petition. And as a party, he was entitled to raise the denial of the recusal motion in his brief, which he did. *See* Tenn. R. App. P. 3(h) (broadly allowing any party to raise any issue "upon the filing of a single notice of appeal"). Although Mr. Hammervold did not join Mr. Manookian's recusal motion in the trial court, the Rules of the Supreme Court of Tennessee speak of recusal as to proceedings, not as to parties. *See* TENN. SUP. CT. R. 10, Rule 2.11(A).

extraordinary patience and was thorough in his review of serious allegations against Mr. Manookian and Mr. Hammervold.  We do not conclude that the judge was actually partial.  But that is not the standard for recusal.  *See Kinard*, 986 S.W.2d at 228 ("[T]he public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial.").  Under Tennessee's objective standard, the judge's impartiality might reasonably be questioned.  So the judge should have recused himself.  *See Cook v. State*, 606 S.W.3d 247, 255 (Tenn. 2020) (reasoning that Tennessee's objective standard "'may sometimes bar trial by judges who have no actual bias'" (quoting *In re Murchison*, 349 U.S. 133, 136 (1955))).

Petitioners also contend that, because the judge made the comments after the contempt order, the comments cannot be evidence of any predisposition against Mr. Manookian.  *See Alley*, 882 S.W.2d at 821.  We again disagree.  The unfavorable news story for which the judge claimed Mr. Manookian was responsible ran in February 2017.  And the trial court issued the contempt order in July 2018.  So the impetus for the judge's thoughts about Mr. Manookian may have existed for almost a year and a half before the court entered the contempt order.[7]  That the judge did not air those thoughts until after entry of the contempt order misses the point.

B.

Having determined that recusal was appropriate, we must consider the impact on the final judgment of contempt and damages.  Retroactive recusal generally is not the appropriate remedy.  *See Watson v. Cal-Three, LLC*, 254 P.3d 1189, 1193 (Colo. App. 2011) ("Recusal provides prospective relief; it does not necessarily invalidate orders previously entered."); 46 AM. JUR. 2D *Judges* § 210, Westlaw (database updated Nov. 2020).  But, in *Liljeberg v. Health Services Acquisition Corp.*, the United States Supreme Court set forth a test to determine whether retroactive recusal is appropriate under the federal recusal statute.  486 U.S. 847, 863-64 (1988).  We find it appropriate to apply the *Liljeberg* test here.  Tennessee courts "may look to federal interpretation of similar federal laws for guidance in enforcing [Tennessee] statutes."  *Van Tran v. State*, 66 S.W.3d 790, 821 (Tenn. 2001) (Barker, J., concurring in part and dissenting in part); *see Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) (interpreting Tennessee anti-discrimination laws), *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010); *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d 445, 448 & n.2 (Tenn. 1996) (interpreting the Tennessee Uniform Arbitration Act); *Thomas v. Oldfield*, 279 S.W.3d 259, 261-62 & n.3 (Tenn. 2009) (interpreting the

---

[7] Although one of the two hearing dates on the contempt petition occurred before the media story ran, there is still a "reasonable basis for questioning" whether partiality may have affected the trial court's contempt order.  *See Davis*, 38 S.W.3d at 564.

Tennessee Rules of Civil Procedure); *State v. Clayton*, 131 S.W.3d 475, 478 (Tenn. Crim. App. 2003) (interpreting the Tennessee Rules of Criminal Procedure). Tennessee's recusal standard is identical to the federal standard, save for noun and pronoun usage. *Compare* TENN. SUP. CT. R. 10, Rule 2.11(A), *with* 28 U.S.C. § 455(a) (2018). And Tennessee courts have often cited the United States Supreme Court with approval on recusal issues. *See State v. Griffin*, 610 S.W.3d 752, 760 (Tenn. 2020) (citing *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1907-09 (2016)); *Cook*, 606 S.W.3d at 255 (citing *In re Murchison*, 349 U.S. at 136); *Bailey v. Blount Cty. Bd. of Educ.*, 303 S.W.3d 216, 239 (Tenn. 2010) (citing *Chapman v. California*, 386 U.S. 18, 23 n.8 (1967)); *Kinard*, 986 S.W.2d at 228 (citing *Offutt v. United States*, 348 U.S. 11, 14 (1954)); *Alley*, 882 S.W.2d at 821 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).

The *Liljeberg* test "consider[s] the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 864. As to the parties in this case, the purpose of the right to impartiality "is to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion." *State v. Benson*, 973 S.W.2d 202, 205 (Tenn. 1998) (citing *Chumbley v. People's Bank & Tr. Co.*, 57 S.W.2d 787, 788 (Tenn. 1933)).

As noted above, the basis for the judge's thoughts about Mr. Manookian may have existed for nearly a year and a half before the July 2018 contempt order. It likely existed at least since May 23, 2017, when the trial court entered the order denying an earlier recusal motion filed by Mr. Manookian. That order indicates that, by then, the judge suspected that Mr. Manookian was behind the news story and unfounded complaints about the judge made to the Board of Professional Responsibility and the Court of the Judiciary. The contempt order itself references the Board of Professional Responsibility complaint in an adverse credibility finding against Mr. Manookian. So once the court revealed its thoughts about Mr. Manookian in open court, one might reasonably question whether the court "had reached a prejudged conclusion" as to the contempt order. *See Benson*, 973 S.W.2d at 205. Although the contempt order is the product of over two years of litigation, under these circumstances "there is a greater risk of unfairness in upholding the judgment in favor of [Petitioners] than there is in allowing a new judge to take a fresh look at the issues." *See Liljeberg*, 486 U.S. at 868; *see also Olerud v. Morgan*, No. M2010-01248-COA-R3-CV, 2011 WL 607113, at *2-3 (Tenn. Ct. App. Feb. 18, 2011) (vacating orders of the trial court entered before a recusal motion was filed when the basis for recusal "was discovered . . . after the court entered critical rulings in the case").

Second, to deny retroactive relief could cause injustice in other cases. Our supreme court has cautioned judges about inappropriate remarks. *See Cook*, 606 S.W.3d at 257 (admonishing Tennessee judges "to refrain from [making] inappropriate

10

comments"); *see also Leighton*, 414 S.W.2d at 420 ("[T]he judge must be careful not to give an expression to any thought, or to infer what his opinion would be in favor or against either of the parties in the trial."). Allowing a remedy for inappropriate remarks even late in the proceedings would encourage judges to reflect on possible grounds for recusal through all phases of a case. *See Liljeberg*, 486 U.S. at 868 (Retroactive enforcement "may prevent a substantive injustice in some future case by encouraging a judge . . . to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered.").

Third, allowing the contempt order to stand risks undermining public confidence in the judiciary. Surely, "'justice must satisfy the appearance of justice.'" *Liljeberg*, 486 U.S. at 864 (quoting *In re Murchison*, 349 U.S. at 136); *Cook*, 606 S.W.3d at 255 (quoting same). Here, when the judge mused that "my day will come," the judge also said that day is "just about here"—less than a month before awarding supplemental damages and finalizing the contempt order. And the judge mentioned that he had "released a one-hundred-twenty-two page memorandum and order on" Mr. Manookian, which was the order holding him in contempt. So the basis upon which it is reasonable to question the judge's impartiality is directly connected to the contempt order.

Because the trial court's impartiality might reasonably be questioned, the court should have recused itself. And under the circumstances of this case, retroactive recusal is warranted. In finding retroactive recusal warranted, we express no opinion on the merits of the contempt proceeding.

### III.

We reverse the denial of the third motion to recuse. And we vacate the contempt and damages order of July 20, 2018, and the order awarding supplemental attorney's fees and expenses of September 27, 2018. This case is remanded for reassignment and further proceedings consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

11